Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6836 | **DATE** | 7/17/2002 |
| **CASE TITLE** | WAYMON T. STARKS vs. ILLINOIS DEPT. OF HUMAN SERVICES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [10-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 19 2002 date docketed | |
| | Docketing to mail notices. | | | 17 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 7/17/2002 date mailed notice | |
| CB | courtroom deputy's initials | 02 JUL 18 AM 11:09 | PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WAYMON T. STARKS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 6836 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
JUL 1 9 2002

## MEMORANDUM OPINION AND ORDER

Waymon T. Starks ("Starks") sues the Illinois Department of Human Services ("IDHS") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Specifically, Starks claims IDHS suspended him for 15 days and then reassigned him to an inferior position based on his sex and race and in retaliation for opposing discrimination. IDHS moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Starks concedes summary judgment on his retaliation claim is proper.

### BACKGROUND

I.   **Facts**

All facts are undisputed unless otherwise noted. Starks, who is an African-American male, began working for IDHS' predecessor agency in 1962. During the relevant time period, Starks was responsible for managing the Bureau of Food Stamp Employment and Training. Starks directly supervised five to six managers and indirectly supervised 90 employees. In February 1999, Starks

hired Sheila Soto to fill a clerical position. At the time she was hired, Soto received public aid from an IDHS program. In approximately September 1999, Soto became Starks' secretary.

On September 14, 2000, Soto complained to IDHS' Equal Employment Opportunity Office that Starks sexually harassed her. Shortly thereafter, Soto was transferred to another location. On September 21, 2000, IDHS' Office of Inspector General, Bureau of Internal Affairs ("OIG"), began investigating Soto's complaint. During the investigation, Starks was placed on paid administrative leave.

On November 13, 2000, OIG issued a report, concluding that Soto's sexual harassment complaint could not be substantiated. However, OIG learned during the investigation that Starks loaned $516.00 to Soto, which was documented by a signed written agreement. OIG determined that Starks' loan to Soto violated an IDHS rule prohibiting employees from engaging in business transactions with clients. Starks denies knowledge of Soto's client status at the time of the loan.

OIG forwarded the report to Ken Kotter, a Caucasian male, who was responsible for personnel. Kotter reviewed the report with Jim Berger, a Caucasian male, who was deputy director of Stark's division. Berger and Kotter recommended that Starks be suspended for 15 days for engaging in a business transaction with an IDHS client. After proceeding through several levels of review, Starks' suspension was approved. Starks served his suspension from January 8 through January 22, 2001. During his administrative leave and suspension, Starks' duties were performed by Denise Powell, an African-American female.

In the interim, Soto's attorney requested that Soto be returned to her previous position. Soto's attorney threatened litigation if her request was not granted. On January 15, 2001, IDHS reinstated Soto to her previous position. When Starks returned from his suspension, Berger assigned Starks to

2

a different office with different responsibilities. In his new position, Starks no longer supervised other employees. Starks' previous job duties were transferred to Marva Arnold, an African-American female.

During his employment with IDHS, Berger was indicted for mail fraud. IDHS suspended Berger without pay for 14 months pending resolution of the case. Berger was acquitted after a six week trial. Prior to his suspension, Berger directly supervised 10 managers and indirectly supervised more than 2,000 employees. After his suspension, Berger directly supervised two managers, indirectly supervised 12 to 15 employees and earned several hundred dollars a month less than he had prior to his suspension.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment standard is applied with special scrutiny to employment

discrimination cases because the outcome may depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II. Starks' Sex and Race Discrimination Claims

Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's sex or race. 42 U.S.C. § 2000e-2(a). In order to prove a case of discrimination under Title VII, Starks must offer either direct or indirect evidence of discrimination. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Starks does not offer any direct evidence that IDHS suspended or reassigned him because of his sex or race. Instead, he relies on the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish his claims of sex and race discrimination.

### A. *Prima Facie* Case

In order to establish a *prima facie* case of sex or race discrimination, Starks must show: (1) he belongs to a protected class; (2) he met his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998). If Starks establishes a *prima facie* case of discrimination, the burden of production shifts to IDHS to produce a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If IDHS sets forth a legitimate justification, the burden then shifts back to Starks to prove that IDHS' reason is a mere pretext for discrimination. *Id.* at 804.

IDHS argues that Starks cannot establish the fourth element of a *prima facie* case. In response, Starks compares himself to Berger. As an initial matter, Berger, who is male, is not outside

4

Starks' protected class for purposes of his sex discrimination claim. In any event, Starks fails to demonstrate he is similarly situated to Berger in all material respects.

In order to establish that Berger is similarly situated, Starks must prove that he and Berger "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Starks fails to offer any evidence he shared the same supervisor with Berger. Indeed, Berger was the supervisor primarily responsible for Starks' suspension and reassignment. In contrast, Starks claims Robert Wright determined Berger's fate three years earlier. Consequently, Berger is not similarly situated to Starks. *See Id.* at 618 ("Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently").

Without identifying any specific individual, Starks next argues that "[s]imilarly situated employees who [lent money to co-workers] were not disciplined." Response at 7. In his answers to interrogatories, Starks claimed Karen Jones-Jackson (race unknown) told him that she loaned co-workers $5.00 to $10.00 during 1996 and 1997. Even if Jones-Jackson's statement were not inadmissible hearsay, Starks fails to demonstrate that IDHS did not take corrective action against Jones-Jackson. Indeed, Starks, as Jones-Jackson's supervisor, was responsible for not taking appropriate disciplinary action. Absent evidence that similarly situated non-African-American and/or female employees were treated more favorably, Starks cannot establish a *prima facie* case of sex or race discrimination.

5

Nevertheless, Starks claims a jury could find discrimination is "really at the base of Plaintiff's reassignment and the granting of his position to a female worker." Response at 10. Although Starks' casual reference to the two African-American women who replaced him after his suspension and reassignment does not create an inference of race discrimination, it may support his sex discrimination claim. *See Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)("That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition"). Assuming evidence of Starks' replacement is sufficient to establish a *prima facie* case of sex discrimination, the burden then shifts to IDES to articulate a non-discriminatory reason for Starks' suspension and reassignment.

**B.  Reasons**

IDHS' burden of production is "'quite light' and the mere articulation of the reason . . . puts the onus back on the plaintiff to prove pretext." *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999), *quoting Pilditch v. Board of Educ. of City of Chicago*, 3 F.3d 1113, 1117 (7th Cir. 1993). IDHS claims Starks was suspended for engaging in a business transaction with a client. IDHS also advances several reasons for Starks' reassignment. First, Berger thought it would be awkward for Soto and Starks to work together again given Soto's sexual harassment allegations against Starks. Second, Berger questioned Starks' judgment because he engaged in a financial transaction with a subordinate. Third, Berger discovered during Starks' suspension that his division was not managed properly. The burden then shifts back to Starks to show that IDHS' reasons for his suspension and reassignment are pretextual.

6

## C. Pretext

When an employer offers multiple reasons for its employment decision, the employee must show that all of the proffered reasons are pretextual. *Ghosh v. Indiana Dep't of Environmental Mgmt.*, 192 F.3d 1087, 1091-92 (7th Cir. 1999). Starks may establish pretext either directly, by showing IDHS' decisions to suspend and reassign him were more likely than not motivated by discriminatory reasons, or indirectly, by showing that IDHS' reasons are unworthy of belief. *Worth v. Tyler*, 276 F.3d 249, 265 (7th Cir. 2001). "The indirect method requires some showing that (1) the defendant's explanation has no basis in fact or (2) the explanation was not the real reason, or (3) the reason stated was insufficient to warrant the termination." *Id.* Starks has not presented any direct evidence of pretext. Therefore, Starks must show that IDHS lied about its reasons for suspending and reassigning him.

Starks disputes the legitimacy of his suspension by claiming he did not know Soto was an IDHS client. However, "[s]elf-serving statements do not shed any light on whether the employer honestly based its employment decision on performance-related considerations, which is the focus of our inquiry in these cases." *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998), *quoting Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994). Starks admitted IDHS maintained a rule against engaging in business transactions with clients. Response at ¶ 18. Starks has not presented any evidence that questions IDHS' sincerity in suspending him for violating this rule.

Starks also disputes the legitimacy of his reassignment by comparing the reasons given by Berger with the reasons given by Kotter. Although shifting reasons for an employment decision can raise an issue of fact regarding pretext, the reasons must actually be different. *See O'Connor v.*

7

*DePaul University*, 123 F.3d 665, 671 (7th Cir. 1997)(use of different terminology to describe different elements of overall conduct does not create an inference of pretext). According to Kotter, Starks was reassigned to work at another location due to Soto's sexual harassment complaint against Starks as well as Starks' financial transaction with Soto. Motion, Ex. D at ¶ 19. Contrary to Starks' position, Kotter's reasons are identical to the first two reasons offered by Berger for Starks' reassignment. Berger's reliance on Starks' performance as an additional reason for reassignment does not impact the legitimacy of the two reasons articulated by both Berger and Kotter. *See Logan v. Kautex Textron North America*, 259 F.3d 635, 640-41 (7th Cir. 2001)(summary judgment proper where reasonable jury could find employee terminated for one of several reasons given for discharge). Starks has not offered any evidence contesting the validity of his reassignment based on his relationship with Soto. Nor has he offered any evidence that non-African-American or female employees were treated differently after loaning money to a subordinate who later accused them of sexual harassment. *See Johnson v. West*, 218 F.3d 725, 733 (7th Cir. 2000)(pretext may be shown by evidence that other similarly situated employees outside protected class committed similar infractions but were not similarly disciplined). Therefore, Starks has ultimately failed to carry his burden of establishing pretext.

## CONCLUSION

Starks has not presented any evidence that IDHS' decision rested upon a legally forbidden ground. Without any evidence that IDHS' decision to suspend and reassign Starks was based on his race or sex, IDHS is entitled to judgment as a matter of law.

ENTER:

Suzanne B. Conlon
United States District Judge

July 17, 2002